Dunkin, Ch.
delivered the opinion of the court.
The appeal has been argued with great zeal, chiefly, as is said, from the doubts expressed by the decree as to the facts testified to by the witnesses. It is very difficult to add any thing on this point to what is said in the decree. Mrs. Garrett and her son may very well have been under the impression that, in fulfilling the will of Stephen Garrett by advancing his children, the executrix only loaned the property. As they were to account for the value in the final distribution, it might naturally assume this character in her contemplation. As to Britton Mims, if he swore to the truth at the hearing, it is difficult to resist the inference that, in January, 1841), he obtained money from the Bank on false pretences, by mortgaging to them property which, he well knew at the time, did not belong to him.
But notwithstanding the uncertainty in which the mind of the court was left, as to some of the facts deposed by the witnesses, it was assumed, and it is the basis of the defence, that, in March, 1826, the negroes were loaned by the complainant to Britton Mims, and that he held them as a loan. It is, nevertheless, conceded by the candor of both the solicitors for the appellant, that, unless Archer vs. McFall be overruled, such loan cannot be supported against the rights of the defendants, and that the decree must stand.
Archer vs. McFall was decided by the unanimous judgment of a full court, after two trials, and on great consideration. The legal propositions are announced with singular clearness and precision. Yet cases may well be conceived as falling within the language of that judgment, to which the court would hesitate to apply its principles. But the circumstances of this case create no such reluctance. Mims was in possession of the negroes, as apparent owner, for at least twelve years anterior to his transactions with the defendants. They had been the property of Stephen Garrett, whose daughter he had married. The will of the testator, which was on record, authorized his executrix to give his children negroes and other property on their marriage. Mims, having no other property, in January, 1840, mortgaged this property to the defendants as a substitute for an endorser, and obtained a loan for four or five thousand dollars, at or about the time. Other transactions followed, and, in December, 1842; Mims being then indebted to the Bank, between *72 three and four thousand dollars, the negroes were taken under the mortgage, and the claim of the complainant was interposed. The question is not, as was said in Archer vs. McFall, whether the complainant intended any fraud in leaving the negroes in possession of Mims, for of this there is no suspicion, but whether she did not thereby enable him to commit a fraud on others, whose rights are entitled to the protection of the court, in preference to her’s, on acknowledged legal principles. It cannot be doubted that the Bank trusted Mims on the faith of his ownership of this property, and on this confidence only; and their claim cannot he defeated by a latent right of which they had no notice, and the existence of which they had no reason to suspect.
It is ordered and decreed that the appeal be dismissed.
Johnson, Ch. concurred.
Harper, Ch. absent from indisposition.

Appeal dismissed.